UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

STEPHEN M. TRATTNER, *as Personal Representative for the Estate of Sarah Lazer*,

    Plaintiff,

v.

NATIONAL WESTERN LIFE INSURANCE COMPANY,

    Defendant.

Civil Action No. TDC-24-0151

**MEMORANDUM OPINION**

    Self-represented Plaintiff Stephen M. Trattner ("Trattner"), in his capacity as personal representative for the estate of his late daughter, Sarah Trattner Lazer ("the Estate"), has filed this civil action against Defendant National Western Life Insurance Company ("National Western"), in which he alleges state law breach of contract and tort claims arising out of National Western's refusal to pay a death benefit to the Estate upon Lazer's death. Trattner seeks compensatory and punitive damages, as well as attorney's fees and costs. National Western has filed a Motion to Dismiss and Trattner has filed a Motion for Partial Summary Judgment, both of which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, and the Motion for Partial Summary Judgment will be DENIED.

## BACKGROUND

### I. The Policy

On July 20, 1984, Trattner's father purchased from National Western a life insurance policy ("the Policy") with a $100,000 death benefit on the life of Trattner's daughter, Sarah Trattner. Trattner's father named Trattner as the owner of the Policy and paid National Western the annual premium of $231 and an additional $5,000 to be deposited in an account held for the benefit of the Policy. The Policy required the independent broker who had sold the Policy to mail to the Policy owner an annual Notice of Annual Premium Due stating that the Policy owner was required to pay an annual premium of $231 each year on July 20. After the death of the broker, National Western assumed responsibility for sending these annual notices. In early 2011 or 2012, Trattner assigned ownership of the Policy to his daughter, who by then was known as Sarah Trattner Lazer ("Lazer"). Consistent with the Policy, each year in advance of July 20 up to and including in 2017, National Western mailed Lazer a Notice of Annual Premium Due stating that she was required to pay the premium of $231 before July 20.

Trattner alleges that on July 20, 2018, National Western mailed Lazer a Notice of Past Premium Due stating that $231 was allegedly due on June 20, 2018 ("the July 2018 Notice"). Trattner asserts that the July 2018 Notice was doubly deficient: the Policy's annual premiums were always due on July 20 and not on June 20, and Lazer had sufficient funds in the Policy account in June 2018 such that she did not owe National Western any unpaid premiums as of June 20. Trattner states that had Lazer received the standard annual Notice of Annual Premium Due stating that her premium was due on July 20 rather than June 20, Lazer would have paid the premium and would not have allowed the Policy to lapse. Trattner also alleges that National Western should have sent the July 2018 Notice to Lazer's new address and included a written

notification that the Policy would lapse if the unpaid premium was not paid by September 20, 2018.

The Policy contained a provision under which if the Policy owner's account lacked sufficient funds to pay the next month's premium, the Policy would enter a grace period. Trattner asserts that if Lazer were to enter the grace period, National Western was required to mail to Lazer a Notice of Premium Due, after which Lazer would have 61 days to pay the amount due, which would be $14.11 per month. According to Trattner, if National Western failed to send that Notice of Premium Due, the Policy would remain in the grace period. Accordingly, Trattner asserts that the Policy remained in a grace period when Lazer died on February 19, 2021.

## II.   2021 Correspondence

On June 25, 2021, after Lazer's death, Trattner mailed a letter to National Western identifying himself as the personal representative of the Estate and seeking payment of the $100,000 death benefit under the Policy. In a July 7, 2021 letter, a National Western representative declined Trattner's request for payment of the death benefit. National Western stated that it had mailed to Lazer the July 2018 Notice, which warned Lazer that the Policy would lapse if National Western did not receive the additional premium by September 20, 2018, and that National Western had also mailed to Lazer a September 2018 Notice of Lapsed Policy ("the September 2018 Notice") informing her that the Policy had lapsed. On July 29, 2021 and August 5, 2021, in response to Trattner's inquiries, a National Western representative emailed Trattner to explain National Western's position that it did not owe the death benefit because the Policy had lapsed upon the non-payment of premiums, and that the grace period ended on September 20, 2018. Trattner, however, asserts that there were sufficient funds in the Policy account to pay the premium due in June 2018, so the July 2018 Notice was in error. In turn, he asserts that because National

3

Western failed to send Lazer a proper Notice of Past Premium Due in July 2018, its application of the grace period provision was incorrect, the Policy did not lapse, and National Western was required to pay the death benefit less unpaid monthly deductions from July 20, 2018 through February 19, 2021.

### III. Procedural History

On December 13, 2023, Trattner, represented by counsel, filed a Complaint against National Western in the Circuit Court of Montgomery County, Maryland, in which he alleged a bad faith denial of Trattner's request for death benefits and a breach of contract. On January 17, 2024, National Western removed the case to this Court based on diversity jurisdiction. On February 6, 2024, the Court granted Trattner leave to file an Amended Complaint, and on February 22, 2024, the Court granted a motion to withdraw filed by Trattner's counsel.

On March 28, 2024, now self-represented, Trattner filed the presently operative Amended Complaint in which he asserts claims for breach of contract, breach of fiduciary duty, and fraud. With leave of the Court, National Western has filed a Motion to Dismiss, and Trattner has filed a Motion for Partial Summary Judgment. The Motions are now fully briefed.

## DISCUSSION

### I. National Western's Motion to Dismiss

In the Motion to Dismiss, National Western argues that the Amended Complaint is time-barred, that Trattner fails to state plausible claims for relief, and that Trattner's request for punitive damages and attorney's fees should be struck because such relief is unavailable. In opposing the Motion, Trattner acknowledges that he is not entitled to punitive damages for the breach of contract claim but continues to seek punitive damages on the fraud claim, as well as attorney's fees.

### A. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attachments to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Where neither the Amended Complaint nor the Motion to Dismiss were filed with any attached documents, the Court will consider only the Amended Complaint in deciding the Motion to Dismiss. The exhibits submitted by Trattner with his opening brief, which served as both a memorandum in opposition to the Motion to Dismiss as well as the memorandum in support of his Motion for Partial Summary Judgment, will be considered only for purposes of the Motion for Partial Summary Judgment. Likewise, the affidavit and exhibits attached to National Western's second brief, which served as both a reply brief on the Motion to

Dismiss and a memorandum in opposition to the Motion for Partial Summary Judgment, will be considered only for purposes of the Motion for Partial Summary Judgment.

### B. Statute of Limitations

National Western argues that Trattner's claims are time-barred because Trattner's claim accrued on September 20, 2018, the date of the September 2018 Notice, but Trattner did not file the original Complaint until December 13, 2023, after the three-year statute of limitations period expired. Trattner responds that his claims accrued on July 7, 2021 or July 29, 2021, when National Western refused to pay the death benefit, and are therefore timely.

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (internal citation omitted). Thus, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," but "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst* ("*Forst*"), 4 F.3d 244, 250 (4th Cir. 1993)).

Under Maryland law, a "civil action at law shall be filed within three years from the date it accrues unless another provision . . . provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5–101 (West 2020). That limitations period applies to breach of contract actions. *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1103

& n.5 (Md. 1999). "The statute of limitations on [a breach of] contract claim" begins to run "when the cause of action for breach of contract accrued." *Id.* at 1103-04. Such a claim accrues when a party "breached its contract" and "when the breach was or should have been discovered." *Id.* at 1104. "The determination of when a breach of contract occurs usually depends on the nature of the promises made in the contract and the times for performing those promises." *Id.* Trattner asserts that in a July 7, 2021 letter, National Western breached the Policy by denying Trattner's request for a death benefit to be paid based on Lazer's death. Based on this allegation, the filing of the original Complaint on December 13, 2023 was within the three-year limitations period.

National Western, however, argues that Trattner's breach of contract claim derives from the allegedly improper July 2018 Notice and the September 2018 Notice stating that the grace period had ended and that the Policy had lapsed. According to National Western, in the context of a breach of contract claim relating to a life insurance policy based on the theory that the policy was wrongfully terminated, the breach of contract claim accrues when the Policy lapsed or was terminated, which in this case occurred on September 20, 2018. Though National Western acknowledges that "no Maryland case is squarely on point" on this issue, Mot. Dismiss at 10, ECF No. 22-1, it cites to out-of-circuit authority such as *Catholic Charities of Southwest Kansas, Inc. v. PHL Variable Insurance Company* ("*Catholic Charities*"), 74 F.4th 1321 (10th Cir. 2023), in which the United States Court of Appeals for the Tenth Circuit, applying Kansas law, affirmed the dismissal of a breach of contract case as time-barred based on the conclusion that where the policyholder had refused to make premium payments that were believed to be too high and then received cancellation notices from the insurance company, *id.* at 1322, later filed claims for death benefits filed by the beneficiary upon the death of the insured persons had actually accrued at the time that the insurance company mailed the cancellation notices, because "an insurance company

7

breaches an insurance contract and starts the applicable limitations period when it makes a demand for payment that conflicts with the insured's understanding of the policy's terms." *Id.* at 1323. In contrast, however, the United States Court of Appeals for the Third Circuit, applying Pennsylvania law, has held that a plaintiff's breach of contract claim relating to a life insurance policy did not accrue until the denial of a claim for death benefits following the death of the insured person because the plaintiff, the wife of the insured person and the policy beneficiary, had no contractual rights and no standing to assert a claim until after her husband's death. *Kucera v. Metropolitan Life Insurance Company*, 719 F.2d 678, 679-81 (3d Cir. 1983).

The Court need not resolve the legal question presented by National Western because the allegations in the Amended Complaint do not necessarily align with its theory. Trattner disputes that the July 2018 Notice was proper and argues that the claim that Lazer failed to pay the premium for June 2018 was factually wrong as a matter of accounting. Based on that initial error, he argues that although the July 2018 Notice and the September 2018 Notice may have been issued, the Policy remained valid such that the action taken to breach the contract was National Western's denial of the death benefit in July 2021. At this early stage, based only on the allegations in the Amended Complaint, the Court cannot fairly conclude that the breach of contract underlying Trattner's claim occurred upon the issuance of the September 2018 Notice.

Moreover, even if the breach could be deemed to have occurred in September 2018, where Trattner asserts that National Western should have mailed the July 2018 Notice to Lazer's new address, there exists a factual dispute as to whether Lazer received the July 2018 Notice and whether National Western's mailings were sent to her proper address. Because a breach of contract claim accrues only "when the breach was or should have been discovered," *Jones*, 741 A.2d at 1104, the Court cannot find at the motion-to-dismiss stage that this presents one of the "relatively

rare" cases in which "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250). The Motion to Dismiss will therefore be denied as to the statute of limitations argument.

### C. Breach of Contract

National Western also argues that Trattner has failed to state a claim for breach of contract because he provided insufficient documentation of the Policy, he has not shown that he has standing to sue, and he does not allege that National Western had an obligation to pay him under the Policy.

Under Maryland law, "to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010). To state a claim for breach of a life insurance contract, a plaintiff must allege: "(1) the existence and terms of the policy; (2) the right or interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) the fact that payment is due, but has not been made." *Tate v. Am. Gen'l Life Ins. Co.*, 627 F. Supp. 3d 480, 491 (D. Md. 2022) (quoting *Milbourne v. Conseco Servs., LLC*, 181 F. Supp. 2d 466, 469 (D. Md. 2002)).

Trattner has alleged the existence of the Policy and has described some of its terms, including that it had a death benefit of $100,000. He contends that the Policy could not have lapsed pursuant to the alleged non-payment referenced in the July 2018 Notice because the Policy account had sufficient funds to pay the premium due for the month of June 2018. Trattner has also alleged that the condition precedent for the Policy, that Lazer is deceased, had occurred, such that the Policy, if not lapsed, required National Western to pay the death benefit of $100,000. He further

9

states that in a July 7, 2021 letter, National Western improperly denied his request for payment of the death benefit because the Policy remained in effect, and that the Estate is owed the payment. Finally, Trattner has alleged that as the personal representative of the Estate, he has not received the $100,000 to which the Estate is entitled. Thus, at this stage, Trattner has sufficiently stated a claim for breach of contract.

National Western's arguments to the contrary are unavailing. Trattner need not attach a copy of the Policy with the Amended Complaint to withstand a motion to dismiss, particularly where National Western does not dispute the existence of the Policy. Furthermore, where Trattner is pursuing this civil action in his capacity as the personal representative for the Estate, and where Lazer was the owner of the Policy, he is effectively a party to the contract and has standing to enforce it. *See* Md. Code Ann., Est. & Trusts § 7–401(y)(1) (West 2022) ("A personal representative may prosecute . . . actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate . . . ."). Moreover, while National Western asserts that Trattner has not alleged that he was a beneficiary of the Policy and thus entitled to receive the death benefit, it now acknowledges that Trattner is a named beneficiary of the Policy and may therefore be entitled to recover a share of any death benefit paid. Nat'l Western Reply Mot. Dismiss & Opp'n Partial Mot. Summ. J. at 7, ECF No. 28. Where the Court would grant leave to amend to add Trattner as a plaintiff in this capacity, National Western's concession that Trattner is a named beneficiary of the Policy renders dismissal on that basis unwarranted at this time. That concession also addresses National Western's argument that Trattner is not owed any payment under the Policy. Therefore, the Court will deny the Motion to Dismiss as to the breach of contract claim.

National Western also argues, and Trattner agrees, that punitive damages are not available on a breach of contract claim. *See Schaefer v. Miller*, 587 A.2d 491, 492 (Md. 1991) ("It is well settled law in Maryland . . . that punitive damages are prohibited in a pure action for breach of contract."). Therefore, Trattner's request for punitive damages as to that claim will be stricken.

D.   **Breach of Fiduciary Duty**

National Western argues that Trattner's state law tort claim for breach of fiduciary duty should be dismissed as failing to state a valid tort claim in the insurance context.

Generally, insurance disputes are matters of contract, not tort. *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1061 (Md. 1999) ("We have repeatedly indicated that the obligation to defend and the obligation to indemnify are entirely contractual."). In *Mesmer*, the Court of Appeals of Maryland, now the Supreme Court of Maryland, stated in the course of discussing insurance policies that "[a] contractual obligation, by itself, does not create a tort duty," and that although "a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, . . . the duty giving rise to the tort cause of action must be independent of the contractual obligation." *Id.* at 1058 (quoting *Wilmington Tr. Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981)). "Under Maryland law, an insurer which mistakenly denies coverage does not breach a tort duty owed either to the insured or to third-party claimants," as "the duty owed to both the insured and to a third-party claimant is entirely contractual." *Jones*, 741 A.2d at 1107-08; *see Mesmer*, 725 A.2d at 1061 ("[A] liability insurer breaches no tort duty when, upon learning of a claim, it erroneously denies coverage . . . .").

Trattner has not identified any applicable exception to this general principle that the insurer-insured relationship creates a contractual relationship and not a tort duty, or otherwise shown that National Western owed a fiduciary duty to either Trattner or Lazer. A fiduciary

11

relationship does not ordinarily arise from an insurer-insured relationship and instead exists only under limited circumstances. *See, e.g., Episcopal Church in S. Carolina v. Church Ins. Co.*, 997 F.3d 149, 157 (4th Cir. 2021) (holding, pursuant to South Carolina law, that an insured did not have a fiduciary duty to the insured). Maryland provides a discrete exception to these principles in that it permits a tort claim for the bad faith failure of an insurer to settle a claim within the policy limits that may give rise to a fiduciary duty when the insurer has exclusive control of the settlement and defense of a claim. *Mesmer*, 725 F.3d at 1063. Maryland law also contemplates that certain insurance agents or brokers may have a "special relationship" beyond "the ordinary insurer-insured relationship" when such agents hold themselves out as highly skilled insurance experts who have assumed a duty to render advice and are compensated accordingly. *See Sadler v. Loomis Co.*, 776 A.2d 25, 35 (Md. Ct. Spec. App. 2001). Neither of these exceptions apply here, as this case does not involve a failure to settle the claim within the policy limits, National Western is not an insurance agent or broker, and even accepting Trattner's claim that National Western took on the role previously performed by a broker, there are no allegations supporting the conclusion that the broker had the kind of special relationship referenced in *Sadler*. Accordingly, the Court finds that Trattner has not alleged a plausible claim for breach of a fiduciary duty and will dismiss that claim.

### E.   Fraud

National Western also argues that Trattner's state law fraud claim should be dismissed. Trattner's fraud claim centers on his allegation that the National Western representatives who denied his request for payment of the death benefit acted in bad faith. Under Maryland law, however, claims of bad faith in relation to insurance policy disputes are limited to certain specific circumstances. As discussed above, Maryland recognizes a common law tort claim based on an insurer, upon having agreed to defend against a claim, acting in bad faith in failing to settle the

claim within the policy limits. *Mesmer*, 725 A.2d at 1062-63; *see Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 519 A.2d 202, 204 (Md. 1987) ("It is well-settled Maryland law that an insured has a cause of action against its insurance company for bad faith refusal to settle a claim within the policy limits."); *Allstate Ins. Co. v. Campbell*, 639 A.2d 652, 658 (Md. 1994). Maryland law also permits a statutory claim for bad faith in relation to certain kinds of insurance policy disputes pursuant to Section 3–1701 of the Courts and Judicial Proceedings Article of the Maryland Code, which provides that an insured party may assert a first-party claim under a property, casualty, or disability insurance policy "[t]o determine the coverage that exists under the insurer's insurance policy," or "[t]o determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss," and that in such an action the insured party may "allege[] that the insurer failed to act in good faith." Md. Code Ann., Cts. & Jud. Proc. § 3–1701(d). Such a statutory claim may not be filed until after the insured party has first exhausted administrative remedies available through the Maryland Insurance Administration. *See id.* § 3–1701(c)(1); Md. Code Ann., Ins. § 27–1001 (West 2017).

Here, Trattner's fraud claim, grounded in the claim that National Western acted in bad faith in denying Trattner's insurance claim, does not fall within any recognized means by which a claim of bad faith in an insurance policy dispute can be asserted under Maryland law. Where the allegations do not support Trattner's fraud claim, the Court will dismiss it for failure to state a claim. In turn, Trattner's request for punitive damages associated with both the breach of fiduciary duty and fraud claims will be stricken.

### F. Attorney's Fees

Finally, National Western argues that Trattner's request for attorney's fees must be stricken, as Trattner has not identified a basis to recover attorney's fees were he to prevail in this

action. "Under the common law 'American Rule' applied in Maryland, the prevailing party in a lawsuit may not recover attorneys' fees as an element of damages or costs unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." *Thomas v. Gladstone*, 874 A.2d 434, 437 (Md. 2005). Trattner has not identified any applicable exception to the American Rule that would justify an award of attorney's fees in this action. Therefore, the Motion to Dismiss will be granted as to Trattner's request for attorney's fees. The Court need not and will not address National Western's alternative arguments for striking Trattner's request for attorney's fees.

## II.     Trattner's Motion for Partial Summary Judgment

In his Motion for Partial Summary Judgment, Trattner appears to argue that the available facts entitle him to summary judgment on all claims. Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49. Because the Court will

dismiss the breach of fiduciary duty and fraud claims, the Court will necessarily deny Trattner's request for summary judgment on those claims.

As for the breach of contract claim, although the Court will deny the Motion to Dismiss on this claim, any grant of summary judgment is premature. Viewing the evidence in the light most favorable to National Western, the Court finds that genuine issues of material fact remain, such as whether Lazer failed to make timely premium payments, whether the July 2018 Notice and September 2018 Notice were properly issued, whether the various Notices were sent to the correct address, and whether the Policy had lapsed at the time of Lazer's death. Because additional factual development is needed, and resolution of certain factual issues in favor of National Western could result in judgment in its favor, summary judgment is not warranted at this time. The Motion for Partial Summary Judgment will be denied.

## CONCLUSION

For the foregoing reasons, National Western's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, in that the Motion will be granted as to the breach of fiduciary duty and fraud claims, and on the issues of punitive damages and attorney's fees, but it will be otherwise denied. Trattner's Motion for Partial Summary Judgment will be DENIED. A separate Order shall issue.

Date:  June 28, 2024

THEODORE D. CHUANG
United States District Judge