UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

STEPHEN M. TRATTNER,
*As Personal Representative for the
Estate of Sarah Lazer*,

    Plaintiff,

v.

NATIONAL WESTERN
LIFE INSURANCE COMPANY,

    Defendant.

Civil Action No. 24-0151-TDC

**MEMORANDUM ORDER**

For a second time, Plaintiff Stephen M. Trattner has filed a Motion for Leave to File a Second Amended Complaint in which he seeks to add a fraud claim against Defendant National Western Life Insurance Company ("National Western"). On June 2, 2024, in ruling on National Western's Motion to Dismiss, the Court dismissed Trattner's fraud claim asserted in the Amended Complaint. *See* Mot. Dismiss Mem. Op. at 12–13, ECF No. 29. Trattner then filed a Motion for Leave to File a Second Amended Complaint to re-assert the fraud claim, which the Court denied on October 30, 2024. *See* Order at 2, ECF No. 43. The Court incorporates those prior rulings by reference. ECF Nos. 29, 43.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading before trial with leave of the court. Fed. R. Civ. P. 15(a). A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, courts deny leave to amend only when the plaintiff is acting in bad faith, granting leave to amend causes prejudice, or the proposed amendment would be futile. *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

## DISCUSSION

In the Motion and his proposed Second Amended Complaint, Trattner describes four fraud claims. First, Trattner alleges that on January 2, 2025, during the pendency of this case, National Western's counsel produced a document entitled "Notice of Annual Premium Due" dated July 20, 2018, which showed that Trattner's daughter, Sarah Trattner Lazer, owed $231.00. Proposed Second Am. Compl. ¶ 66, Mot. Ex. 1, ECF No. 57-1. Trattner claims that this document demonstrates that National Western's Motion to Dismiss, filed on April 30, 2024, was fraudulent in that it relied on a September 20, 2018 document entitled "Notice of Lapsed Policy" that stated that Lazer failed to pay her annual premium and that it had been due on June 20, 2018. *Id.* ¶ 67.

Second, Trattner alleges fraud arising from a series of emails between Trattner and Courtney Johnson, a National Western employee, during July 2021. Trattner asserts that in the July 2021 emails, Johnson intentionally misrepresented that the July 20, 2018 and the September 20, 2018 Notices provided valid reasons for denying Trattner's claim, and that Johnson "expect[ed] Mr. Trattner to rely on those misrepresentations." *Id.* ¶ 70. Third, he alleges fraud based on emails sent by Johnson to Trattner in August 2021 in which Johnson asserted that Lazer's life insurance policy "lapsed effective June 20, 2018." *Id.* ¶ 75. Fourth, Trattner alleges fraud based on the claim that Neil Westgate, a National Western employee, committed perjury in his affidavit and his November 20, 2024 deposition testimony in this case, including by asserting that a certain figure represented a payment for May 2018 rather than for June 2018.

Upon review, the Court will decline to grant leave to amend to add these fraud claims because it finds that the proposed amendments would be futile for two reasons. First, to the extent that these fraud claims can be construed as claims that National Western engaged in fraud by refusing Trattner's request that it pay his claim for the death benefit arising from Lazer's life

insurance policy, even while knowing that it was required to pay the benefit, such a claim is properly viewed as a bad faith denial of a first-party insurance claim that necessarily fails for reasons consistent with the Court's previous analysis. *See* Mot. Dismiss Mem. Op. at 12–13. In general, Maryland law does not recognize first-party tort claims against insurers arising out of insurance coverage disputes. *See Stephens v. Liberty Mut. Fire Ins. Co.*, 821 F. Supp. 1119, 1121 (D. Md. 1993) ("In the context of a dispute between an insurance carrier and its insured, the relationship between the parties does not warrant the imposition of tort duties."). Instead, actions between insured individuals and their insurance carriers are generally confined to the realm of contract law. *See Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1061 (Md. 1999); *Stephens*, 821 F. Supp. at 1122; *Johnson v. Fed. Kemper Ins. Co.*, 536 A.2d 1211, 1213 (Md. Ct. Spec. App. 1998); *Yuen v. Am. Republic Ins. Co.*, 786 F. Supp. 531, 533 (D. Md. 1992). In particular, Maryland law does not "recognize as a tort action the bad faith failure of an insurer to pay a first party claim." *Johnson*, 536 A.2d at 1213; *Yuen*, 786 F. Supp. at 533 ("[I]t is well-settled that there is no first party bad faith claim maintainable against an insurer under Maryland law."). Thus, a fraud claim as construed above would be futile.

Trattner's citation of *Zappone v Liberty Life Insurance Co.*, 706 A.2d 1060 (Md. 1998) does not alter this conclusion. In *Zappone*, the Court of Appeals of Maryland, now the Supreme Court of Maryland, held that a plaintiff may pursue a "recognized independent tort remedy," in that case a claim "sounding in deceit and negligence" in connection with the sale of an insurance policy, "without first invoking and exhausting the administrative remedy under the Unfair Trade Practices subtitle of the Insurance Code." *Id.* at 1062, 1071. Even assuming that this principle applies beyond the context of a tort claim arising from the sale of an insurance policy, such that there is no requirement to first bring a comparable statutory claim before the Maryland Insurance

Administration, *see* Md. Code Ann., Ins. § 27–1001(d)(1) (West 2017); Md. Code. Ann., Cts. & Jud. Proc. § 3–1701 (West 2020), it does not provide a basis to assert a fraud claim arising from a bad faith failure to pay a first-party insurance claim, which is not available under Maryland law. *See Johnson*, 536 A.2d at 1213; *Yuen*, 786 F. Supp. at 533. Therefore, the proposed fraud claims, if alleging that National Western acted in bad faith in denying coverage, are futile.

Second, even if Trattner's proposed fraud claims are viewed as falling outside this category, the Court still finds that they fail to state plausible common law fraud claims and are therefore futile. Generally, allegations of fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under this standard, Trattner must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and "what he obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

To establish fraud under Maryland law, a plaintiff must demonstrate that (1) the defendant made a false representation to the plaintiff; (2) the defendant either knew the misrepresentation was false or made the misrepresentation with "reckless indifference as to its truth"; (3) the defendant made the misrepresentation for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff, as a result of the misrepresentation, suffered some compensable injury. *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994).

Trattner's proposed fraud claims all fail because he does not allege, and cannot plausibly allege, sufficient facts to support the element of reliance on the allegedly fraudulent misrepresentations. As to this element, a plaintiff must allege how the misrepresentations

4

"substantially induced the plaintiff to act." *Nails*, 639 A.2d at 669. As to the first fraud claim, Trattner does not allege, and cannot plausibly allege, that he relied to his detriment on National Western's allegedly fraudulent Motion to Dismiss, because he filed an opposing brief in which he did not accept National Western's arguments. Likewise, as to the second and third fraud claims, he does not allege that he relied on the emails from Johnson, and where he has consistently adhered to the position that Lazer's insurance policy did not lapse, he cannot plausibly allege such reliance. As for the fourth fraud claim, Trattner does not allege that he relied on any allegedly perjurious statements by the National Western witness, Westgate, in his affidavit and deposition testimony; rather, Trattner acknowledges in his proposed Second Amended Complaint that he disagreed with Westgate's assertions as soon as they were made.

Across all of the proposed fraud claims, Trattner's attempt to construct fraud claims based on alleged false statements made to him either shortly before or during this litigation, while likely flawed in other ways, fundamentally fails because the claims are based on statements that he never accepted or relied upon in any way. Therefore, the Court finds that Trattner's proposed amendments are futile and thus will deny the Motion.

## CONCLUSION

Accordingly, it is hereby ORDERED that Trattner's Motion for Leave to File a Second Amended Complaint, ECF No. 57, is DENIED.

Date: August 28, 2025



THEODORE D. CHUANG
United States District Judge