## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

STEPHEN M. TRATTNER,
*as Personal Representative for
the Estate of Sarah Lazer,*

      Plaintiff,

      v.

NATIONAL WESTERN
LIFE INSURANCE COMPANY,

      Defendant.

Civil Action No. 24-0151-TDC

## MEMORANDUM OPINION

Plaintiff Stephen M. Trattner ("Trattner"), in his capacity as personal representative for the estate of his late daughter, Sarah Trattner Lazer ("Lazer"), has filed this civil action against Defendant National Western Life Insurance Company ("National Western") in which he alleges a state law breach of contract claim arising out of National Western's refusal to pay the death benefit of a life insurance policy in Lazer's name. The parties have filed Cross Motions for Summary Judgment, which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, National Western's Motion will be GRANTED, and Trattner's Motion will be DENIED.

## BACKGROUND

Relevant background of this case is set forth in this Court's June 28, 2024 memorandum opinion, which the Court incorporates by reference. *See Trattner v. Nat'l W. Life Ins. Co.*, No. TDC-24-0151, 2024 WL 3237075, at *1–2 (D. Md. June 28, 2024). Additional facts relevant to the resolution of the pending Motions are set forth below.

## I.    The Policy

On July 20, 1984, Trattner's father purchased from National Western a flexible premium adjustable life insurance policy ("the Policy") with a $100,000 death benefit on the life of Lazer, who was then known as Sarah Trattner. Trattner's father named Trattner as the owner of the Policy and paid National Western an initial premium of $5,231.00. The Policy was issued with a planned, billable annual premium of $231.00 and had an anniversary date of July 20 each year. As to the planned premium, the Policy stated that "[a]fter the initial payment is made, we will accept any amount of money given to us . . . at any time as premium while this policy is in force." Joint Record ("J.R.") 8, ECF No. 70. However, the only other premium payment ever sent to National Western in relation to the Policy was a $231.00 payment by Lazer on July 19, 2012.

The Policy had an account balance, which was calculated each month as the sum of the previous month's account balance, the interest earned on the previous account balance, and any premiums received for that month, minus any monthly deduction for the Policy owed in relation to the prior month. The monthly deduction included the monthly cost of insurance, the monthly expense charge, and any charge for an increase in the face amount of the Policy. The Policy permitted a partial surrender, through which an amount up to the cash value of the Policy would be paid to the policyowner and deducted from the account balance.

The Policy also contained a provision referencing a grace period ("the Grace Period"), which stated that:

> If the account balance less any policy loans and loan interest on the date immediately before a Monthly Anniversary day is insufficient to cover the monthly deduction for the month following such Monthly Anniversary day, a grace period of 61 days shall be allowed for the payment of at least enough premium to cover the monthly deductions. Notice of this premium will be mailed to the last known address of the policyowner. The grace period will begin on the date of this notice. This premium shall be due on the Monthly Anniversary day and, if not paid within the grace period, all coverage under this policy will terminate without value at the

2

end of the 61 day period. If a claim by death during the grace period becomes payable under the policy, any overdue monthly deductions will be deducted from the proceeds.

*Id.* According to the Policy, it would terminate at the earliest of:

1.     The date that we receive a written request from you to surrender the policy.

2.     The Policy Anniversary after the Insured's 95th birthday.

3.     The Maturity Date of this policy.

4.     The date that the grace period ends without payment of a premium to cover the monthly deduction.

5.     The date the insured dies.

J.R. 6.

On January 27, 2012, National Western received a Policyowner's Change Request from Trattner, who assigned ownership of the Policy to Lazer. Lazer provided an address of record of 1220 Blair Mill Road, Apt. 903, Silver Spring, Maryland 20910. After this ownership change request, Lazer remained the policyowner until her death.

In August 2014, after receiving a United States Postal Service ("USPS") returned mail notice from Lazer's old address, National Western updated Lazer's address of record to 101 King Farm Boulevard, Apt. D207, Rockville, Maryland 20850.

By April 2015, the Policy had an account balance of $20,429. In May 2015, Lazer requested a partial surrender of the Policy in the amount of $20,000, which National Western sent to Lazer in the form of a check dated June 9, 2015. After the partial surrender, the Policy's account balance decreased to $446.72 as of July 20, 2015. Prior to the partial surrender, the interest earned on the Policy's account balance was greater than the Policy's monthly deductions, such that the account balance grew each month. However, after the partial surrender, this was no longer true, and the monthly deductions began to reduce the Policy's account balance during the period from

June 2015 to June 2018. Indeed, in the Annual Statements mailed to Lazer during this period, National Western stated that "if no further premium payments are made . . . based on the current rate of interest and cost of insurance, coverage will cease in Sep[tember] 2018." J.R. 22, 24, 26, 28.

In July 2018, the Policy's account balance was $9.28, which was insufficient to cover the Policy's monthly deductions for the preceding month. On July 20, 2018, National Western sent three documents to Lazer's King Farm Boulevard address. The first was a "Notice of Premium Due," which stated that the Policy's $231.00 annual premium was due, which aligned with the Policy's anniversary date. J.R. 34. The second was a "Notice of Past Due Premium," which stated that:

> The account balance on your policy is insufficient to pay the premium that was due 06/20/2018. If an additional payment is not received by 09/20/18, your policy will lapse. This minimum amount must be received in our office by 09/10/18 to allow for processing.
>
> The payment required to pay this past due premium and keep your policy from lapsing is $231.00. Any automatic method of payment will continue during the grace period.

J.R. 33. The third was a letter which stated, "We have recently sent you a premium notice advising you that an additional premium payment is required to keep your policy in force. Since your current premium payment may be insufficient to keep your policy in force, we would recommend that you contact our office regarding this problem." J.R. 35. Following the issuance of these documents, Lazer did not remit any premiums to National Western or otherwise contact National Western.

Unbeknownst to National Western, Lazer stopped residing at the King Farm Boulevard address at some time before July 20, 2018. National Western discovered this fact in September 2018, when it received a USPS notice stating that Lazer no longer resided at that address. On

September 6, 2018, National Western obtained a consumer verification report for Lazer showing her new address as 635 Azalea Drive, Rockville, Maryland 20850. There is no evidence that Lazer ever informed National Western of this address change.

On September 20, 2018, National Western mailed to Lazer at the Azalea Drive address a "Notice of Lapsed Policy" which stated:

> DANGER
> YOUR POLICY HAS LAPSED
> because the premium was not paid
> STOP AND THINK.

J.R. 41. The Notice further stated, "It may not be too late if you act now. Your policy will be considered for reinstatement upon receipt of a complete application for reinstatement and payment of the amount due." *Id.* Lazer received this Notice on or about September 20, 2018, but she never requested reinstatement of the Policy.

Lazer died on February 19, 2021. On June 9, 2021, Trattner was appointed the personal representative of Lazer's estate ("the Estate"). On June 25, 2021, Trattner mailed a letter to National Western identifying himself as the personal representative of the Estate and seeking payment of the $100,000 death benefit under the Policy. In a July 7, 2021 letter, a National Western representative declined Trattner's request for payment of the death benefit on the grounds that the Policy had lapsed on September 20, 2018 and that National Western never received a request to reinstate the Policy.

## II.    Procedural History

On December 13, 2023, Trattner filed a Complaint against National Western in the Circuit Court of Montgomery County, Maryland, in which he alleged a bad faith denial of Trattner's request for the death benefit and a breach of contract. On January 17, 2024, National Western removed the case to this Court based on diversity jurisdiction. On March 28, 2024, Trattner filed

an Amended Complaint in which he asserted claims of breach of contract, breach of fiduciary duty, and fraud. On June 28, 2024, in ruling on National Western's Motion to Dismiss, the Court granted the motion as to the breach of fiduciary duty and fraud claims but denied it as to the breach of contract claim. In the same ruling, the Court denied Trattner's Motion for Partial Summary Judgment. Following discovery, National Western has filed a Motion for Summary Judgment as to the remaining breach of contract claim, and Trattner has filed a Cross Motion for Summary Judgment.

## DISCUSSION

In its Motion for Summary Judgment, National Western argues that Trattner's breach of contract claim is time-barred, and that based on the present record, the claim fails as a matter of law. In his Cross Motion for Summary Judgment, Trattner argues that he is entitled to summary judgment because he has established a breach of contract claim as a matter of law.

## I.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court must believe the evidence of the non-moving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248). A dispute of material fact is "genuine" only if sufficient evidence favoring the

nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.    Statute of Limitations

National Western argues that Trattner's breach of contract claim is time-barred. Under Maryland law, a "civil action at law shall be filed within three years from the date it accrues unless another provision . . . provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5–101 (LexisNexis 2020). That three-year limitations period applies to breach of contract actions. *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1103 & n.5 (Md. 1999). "The statute of limitations on [a breach of] contract claim" begins to run "when the cause of action for breach of contract accrued." *Id.* at 1103–04. Such a claim accrues when a party "breached its contract" and "when the breach was or should have been discovered." *Id.* at 1104. "The determination of when a breach of contract occurs usually depends on the nature of the promises made in the contract and the times for performing those promises." *Id.*

National Western argues that the limitations period expired because the breach of contract claim accrued on September 20, 2018, when National Western sent Lazer the "Notice of Lapsed Policy," J.R. 41, but Trattner did not file the original Complaint in this case until December 13, 2023, more than three years later. More specifically, National Western asserts that the claim accrued at that time because the Notice effected the termination of the policy, and the "alleged

wrongful termination of the Policy is the central 'breach' from which all of the alleged harm flows." Def.'s Mot. Summ. J. at 19, ECF No. 66-1. Where it is undisputed that Lazer received the Notice of Lapsed Policy, National Western argues that the breach was discovered or should have been discovered at that time.

In opposing this argument, Trattner contends that a breach of contract claim based on a life insurance policy cannot accrue until the death of the insured, because payment is not due until that time, and National Western's "failure to pay benefits" following Lazer's death "was a condition precedent to filing the claim for breach of contract." Pl.'s Mot. Summ. J. at 9, ECF No. 67-1. He therefore argues that the breach of contract claim accrued on July 7, 2021, when National Western refused to pay the death benefit.

The parties have not identified, and the Court has not found, controlling authority that definitively establishes when a claim for a breach of a life insurance policy accrues under Maryland law. Under the specific facts of this case, the Court finds that where National Western specifically repudiated and terminated the Policy as of September 20, 2018 and provided an explicit notice of that fact to the policyowner in the form of the Notice of Lapsed Policy, Trattner's claim accrued when Lazer received that notice, because at that point she had the right to sue. *See C.W. Blomquist & Co., Inc. v. Cap. Area Realty Invs.*, 311 A.2d 787, 791 (Md. 1973) (recognizing that a claim for an anticipatory breach or repudiation of a contract under Maryland law is established when a plaintiff can show a "definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract"); *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 596 (D. Md. 2019); *see also Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 585, 593 (D. Md. 2019) (under Maryland law, holding that a business's claim for a wrongful denial of an insurance claim accrued when the insurance company notified

the plaintiff of the denial of coverage because it was at that point that the plaintiff had the right to sue, even though the insurer stated that it might reconsider if additional information was presented).

This reasoning has been applied in a strikingly similar case arising under another state's law. In *Catholic Charities of Southwest Kansas, Inc. v. PHL Variable Insurance Co.* ("*Catholic Charities*"), 74 F.4th 1321 (10th Cir. 2023), a life insurance policyholder received grace period notices and demands for premium payments from the defendant insurance company but did not pay the requested premiums because it believed that the premium payments were too high and that the grace period notices were defective and untimely under the terms of the policy. *See id.* at 1322. When the plaintiff did not pay the premiums, the defendant sent cancellation notices informing the plaintiff that the policy had lapsed. *See id.* When the insured died, the plaintiff filed claims for death benefits, which the defendant did not pay based on the position that the policy had been terminated based on the non-payment of premiums. *See id.* The United States Court of Appeals for the Tenth Circuit, applying Kansas law, affirmed the dismissal of the breach of contract claim as time-barred based on the conclusion that the plaintiff's claim accrued at the time that the insurance company sent the cancellation notices, because at that point, the plaintiff could have asserted a breach of contract claim seeking nominal damages, specific performance, or a refund of premiums. *Id.* at 1323–24. Where Maryland law allows for a claim of an anticipatory breach or repudiation of a contract, this same reasoning is properly applied to the present claim. *See id.*; *C.W. Blomquist & Co.*, 311 A.2d at 791.

Trattner's reliance on *Tate v. American General Life Insurance Co.*, 627 F. Supp. 3d 480 (D. Md. 2022), for the proposition that a breach of contract claim based on a life insurance policy does not accrue until the insured has died, is misplaced. *Tate* did not address the issue of when a

9

claim accrues for purposes of the statute of limitations. *See id.* at 491–93. In *Tate*, the plaintiffs brought a breach of contract claim after the defendant life insurance company informed them, while they were still alive, that their life insurance policies would terminate on a maturity date several years in the future, which conflicted with their understanding that the policies would remain in force as long as all premiums were paid. *See id.* at 487–88. Although the court found that there was no viable breach of contract claim until the death of the insured and payment was due, it permitted the plaintiffs' claims for an anticipatory breach of contract to proceed. *See id.* at 491–92. Thus, *Tate* is not only consistent with, but actually validates, the Court's conclusion that Lazer had a viable cause of action at the time that the Notice of Lapsed Policy was issued in September 2018.

Finally, Trattner's citation to *Kucera v. Metropolitan Life Insurance Co.*, 719 F.2d 678 (3d Cir. 1983), for the proposition that "a breach of contract claim arising from a life insurance policy does not accrue until the denial of a claim for death benefits," Pl.'s Mot. Summ. J. at 10, likewise does not alter the Court's conclusion. In *Kucera*, the court, applying Pennsylvania law, held that the breach of contract claim did not accrue until the denial of a claim for death benefits because the plaintiff, the decedent's wife and a beneficiary of the policy, had no contractual rights and no standing to assert a claim until the insured's death. *See id.* at 680–81. Here, however, because Trattner has advanced this suit in his capacity as Lazer's personal representative, he effectively steps into Lazer's shoes in order to "prosecute . . . actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted." Md. Code Ann., Est. & Trusts § 7–401(y)(1) (LexisNexis 2022); *see ACandS, Inc. v. Asner*, 657 A.2d 379, 397 (Md. Ct. Spec. App. 1995) (holding that "a personal representative steps into the shoes of [the]

10

decedent"), *rev'd on other grounds*, 686 A.2d 250 (Md. 1996); *Hirpassa v. Prince George's Cnty.*, No. RWT 09cv2631, 2010 WL 2730651, at *6 n.7 (D. Md. July 9, 2010) (stating that under Maryland law, the personal representative of an estate may seek "recovery for the injuries suffered" by the decedent and prosecute actions "just as if the victim were still alive"). Unlike the plaintiff-beneficiary in *Kucera*, Lazer was not constrained from bringing a claim against National Western after it sent her the Notice of Lapsed Policy in September 2018, so Trattner, as the personal representative of the Estate, must be deemed to have been similarly unconstrained from asserting such a claim at that time.

Notably, the record reflects that where Trattner was appointed as the personal representative of the Estate on June 9, 2021 and was aware of National Western's refusal to pay the death benefit as of July 7, 2021, he had the opportunity to file the present claim within the applicable limitations period but did not do so.

Thus, although the Court recognizes that in some instances a claim for breach of a life insurance policy may not accrue until the refusal to pay the death benefit, and it does not reach the issue of whether a claim by a beneficiary does not accrue until after the policyowner's death, it finds on the present facts that where Lazer had actual notice of National Western's allegedly wrongful repudiation or termination of the contract through the Notice of Lapsed Policy on September 20, 2018, and the claim is asserted by the personal representative of the Estate, the limitations period expired on or about September 20, 2021. Accordingly, Trattner's breach of contract claim is time-barred, and the Court will grant National Western's Motion for Summary Judgment and deny Trattner's Cross Motion for Summary Judgment on that basis.

### III.    Breach of Contract

In the alternative, the Court also finds that, viewing the evidence in the light most favorable to Trattner and drawing all reasonable inferences in his favor, National Western is entitled to summary judgment on the breach of contract claim.

Under Maryland law, to prove a claim for breach of a life insurance contract, a plaintiff must establish: "(1) the existence and terms of the policy; (2) the right or interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) the fact that payment is due, but has not been made." *Milbourne v. Conseco Servs., LLC*, 181 F. Supp. 2d 466, 469 (D. Md. 2002) (quoting *Giles v. Am. Fam. Life Ins. Co.*, 987 S.W.2d 490, 494 (Mo. Ct. App. 1999)).  Here, the parties dispute only whether Trattner can prove the sixth element, that payment is due under the Policy but has not been made.

The record reflects that on July 20, 2018, National Western sent to Lazer a "Notice of Past Due Premium" which informed her that the Policy's account balance was insufficient to pay the premium due, and that if no additional payment was received by September 20, 2018, the Policy would lapse. J.R. 33.  This Notice stated that the "payment required to pay this past due premium and keep your policy from lapsing is $231.00." *Id.*  It is undisputed that Lazer did not remit any premiums to National Western after receiving the Notice of Past Due Premium.  Under the terms of the Policy, this Notice started the 61-day Grace Period, and after the Grace Period ended on September 20, 2018, National Western sent to Lazer a Notice of Lapsed Policy which informed her that the Policy had lapsed.  This Notice aligned with the Policy's terms, which stated that the "policy will terminate at the earliest of . . . [t]he date that the grace period ends without payment of a premium to cover the monthly deduction." J.R. 6.  Although the Notice of Lapsed Policy

stated that Lazer could apply to have the Policy reinstated, Lazer never requested reinstatement of the Policy, so the Policy was not in effect at the time of her death on February 19, 2021. Accordingly, when Trattner requested payment of the death benefit on June 25, 2021, no payment was due from National Western.

Trattner admits that by June 19, 2018, "there were insufficient funds to pay the Monthly Cost of Insurance, so the Policy was poised to enter the Grace Period." Pl.'s Mot. Summ. J. at 5. However, Trattner argues that the July 20, 2018 Notice of Past Due Premium was deficient under the terms of the Policy. Specifically, Trattner cites the Policy's Grace Period provision, which in part states that:

> If the account balance . . . is insufficient to cover the monthly deduction for the month following such Monthly Anniversary day, a grace period of 61 days shall be allowed for the payment of at least enough premium to cover the monthly deductions. *Notice of this premium* will be mailed to the last known address of the policyowner. The grace period will begin on the date of this notice.

J.R. 8 (emphasis added). Trattner argues that because the Notice of Past Due Premium stated that the "payment required to pay this past due premium and keep your policy from lapsing is $231.00," J.R. 33, which reflected the amount of the annual premium, the Notice violated the Grace Period provision, since that provision required "notice of the amount of money that it would take for [Lazer] to cover the monthly deduction," which was less than $231.00. Pl.'s Mot. Summ. J. at 5. Accordingly, Trattner claims that in the absence of a valid notice, the Policy never entered the Grace Period, and the Policy therefore did not terminate on September 20, 2018 and instead remained in effect for over two more years until Lazer's death in February 2021.

The interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 157 A.3d 331, 334 (Md. Ct. Spec. App. 2017); *Tate*, 627 F. Supp. at 490. A court's interpretation of a contract is generally "limited to the four corners of the agreement." *Walton v. Mariner Health of Md., Inc.*, 894 A.2d 584, 594 (Md. 2006); *Tate*, 627 F. Supp. 3d at 490. In

interpreting a contract, a court generally applies the "ordinary and accepted meaning" of the contract's plain language. *Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 311 (Md. 2019) (quoting *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 691 (Md. 2010)). In doing so, the court seeks to determine "from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time" the contract was effectuated. *Gen. Motors Acceptance v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985). Under this standard, a disputed contract provision must be read "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and 'the facts and circumstances of the parties at the time of execution.'" *Credible Behav. Health, Inc.*, 220 A.3d at 310–11 (quoting *Ocean Petroleum, Co.*, 5 A.3d at 690); *Tate*, 627 F. Supp. 3d at 490.

The Court disagrees with Trattner's hyper-technical reading of the Policy. National Western was required under the Grace Period provision to send to Lazer a "Notice of this premium," which it appeared to do by sending the Notice of Past Due Premium issued on July 20, 2018. J.R. 8, 33. The only definition in the Policy that arguably could apply to the term "premium" is that of the "planned periodic premium," which referred to the annual premium of $231.00, for which National Western had on the same date issued a Notice of Premium Due. J.R. 4, 8, 34. Based on its placement, however, the language "Notice of this premium" in the Grace Period provision arguably refers back to the language in the prior sentence stating that the Grace Period would be allowed "for the payment of at least enough premium to cover the monthly deductions." J.R. 8. Under the Policy, the amount that was "at least enough" to cover the monthly deductions could vary, particularly in the later stage of the Policy when the monthly deductions increased significantly. J.R. 5, 8. Under these circumstances, the Court finds that National Western's statement in the Notice of Past Due Premium that "the payment required to pay this past due

14

premium and keep your policy from lapsing is $231.00" was both accurate and consistent with the Grace Period provision because it accurately stated an amount, which corresponded to the Policy's annual planned premium identified in the Notice of Premium Due, which was in fact past due and which, if paid, would also have kept the Policy from lapsing. J.R. 33.

Regardless of how the term "premium" as used in this provision is interpreted, there is no language in the Grace Period provision that would support the conclusion, as advanced by Trattner, that National Western was permitted to reference only the minimum amount to be paid to maintain the Policy, and that the broader reference to the annual premium invalidated both the Grace Period and the later Notice of Lapsed Policy issued on September 20, 2018 after Lazer failed to make any payments in any amount. Trattner's reading would lead to the absurd result that even after Lazer undisputedly had notice that she had to make premium payments to maintain the Policy, received a formal Notice of Lapsed Policy in September 2018, and nevertheless failed to make any payments or even contact National Western for over two years until her death on February 19, 2021, that somehow the Policy remained in effect up to and including that date. *See Middlebrook Tech, LLC v. Moore*, 849 A.2d 63, 81 (Md. Ct. Spec. App. 2004) ("[I]t is a fundamental tenet of contract interpretation that a court will not read contract language to produce an absurd result."). For all of these reasons, the Court finds that the Policy's 61-day Grace Period began with the issuance of the Notice of Past Due Premium and ended on September 20, 2018, and that the Policy then lapsed, consistent with National Western's Notice of Lapsed Policy sent on that date.

Finally, although not necessary to the Court's conclusion, the Court notes that there is no evidence that had the Notice of Past Due Premium listed an amount lower than $231.00, Lazer would have paid it, particularly where she had made only one premium payment across the life of

15

the Policy and undisputedly had notice that National Western had deemed to the Policy to have lapsed, yet she took no steps even to attempt to have the Policy reinstated.

Because the Policy had lapsed and was never reinstated prior to when Lazer died on February 19, 2021, National Western was not required to make the payment of the death benefit requested by Trattner on June 25, 2021. In turn, Trattner is unable to establish the sixth element of a breach of a life insurance contract claim, that payment is due under the Policy but has not been made. *See Milbourne*, 181 F. Supp. 2d at 469. Accordingly, the Court will grant National Western's Motion for Summary Judgment and deny Trattner's Cross Motion for Summary Judgment on this basis as well.

## CONCLUSION

For the foregoing reasons, National Western's Motion for Summary Judgment will be GRANTED, Trattner's Cross Motion for Summary Judgment will be DENIED, and judgment will be entered in favor of National Western. A separate Order shall issue.

Date: June 26, 2026

THEODORE D. CHUANG
United States District Judge

16